# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

September 22, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ANGELA B. CRITES,**
**Claimant Below, Petitioner**

**vs.)    No. 16-1116** (BOR Appeal No. 2051366)
                        (Claim No. 2014008606)

**ARMSTRONG HARDWOOD FLOORING COMPANY,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Angela B. Crites, by Robert L. Stultz, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Armstrong Hardwood Flooring Company, by Alyssa A. Sloan, its attorney, filed a timely response.

The issue on appeal is whether a request from Lucas Pavlovich, M.D., for a right knee arthroscopy and the prescription medications Percocet 5/500, Vicodin 5/500, and Ultram 50 mg for post-operative pain, as well as unicompartment knee replacement surgery, is medically related and reasonably required to treat the compensable injury. The claims administrator determined that neither the surgeries nor the medications are necessary on November 12, 2015. The Office of Judges affirmed the claims administrator's decision on June 2, 2016. The Board of Review affirmed the Order of the Office of Judges on November 9, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Crites, a plant worker for Armstrong Hardwood Flooring Company, injured her right knee at work on April 5, 2013, when she stood up after kneeling. On April 12, 2013, Ms. Crites sought treatment at Elkins Express Care for her injury. An x-ray of the right knee demonstrated

1

mild osteoporosis and mild degenerative arthritis. Ms. Crites was examined and diagnosed with bursitis of the knee. She was given a wrap and was provided instructions to take anti-inflammatory medications.

Ms. Crites was examined at Tygart Valley Orthopedics in June of 2013. She described the injury and denied prior knee problems. Dr. Pavlovich recommended an MRI of the knee to rule out a possible medial meniscus tear versus an articular cartilage injury. A June 27, 2013, MRI revealed one degenerative cartilaginous delamination in the medial and lateral knee compartments and two small knee joint effusions, a Baker's cyst, and likely ganglion cyst between the anterior cruciate ligament and posterior cruciate ligament. Dr. Pavlovich reviewed the MRI and confirmed a medial meniscus tear. Dr. Pavlovich recommended proceeding with a diagnostic arthroscopy. In a January 23, 2014, decision, the claims administrator denied authorization for arthroscopic surgery. In another decision dated April 11, 2014, the claims administrator held the claim compensable for bursitis of the right knee.

On May 9, 2014, Dr. Pavlovich performed surgery on Ms. Crites and confirmed she suffered from a right knee meniscus tear. At the time of surgery, Dr. Pavlovich completed a diagnosis update asking that the conditions of internal derangement and medial meniscus tear be added to the compensable conditions in this claim. On June 20, 2014, Ms. Crites was seen by Dr. Pavlovich for a follow-up. He noted that Ms. Crites continued to have pain and swelling. Ms. Crites indicated that the swelling is worse after she has been using her knee for a while and felt that she was unable to return to work at this time because of the continued problems. Dr. Pavlovich noted that Ms. Crites should remain off work until July 7, 2014, and then return to work with no restriction.

ChuanFang Jin, M.D., evaluated Ms. Crites on June 23, 2014, and diagnosed pre-existing degenerative arthritis of the right knee, history of acute flare-up of right knee; status-post chondroplasty; and medial meniscal debridement. Dr. Jin noted that from a medical perspective, Ms. Crites's degenerative disease of the knee is not a result of the compensable injury but a pre-existing condition. She noted that it is common for symptoms of degenerative arthritis to manifest with or without obvious traumatic injury. Clinical and medical evidence shows that Ms. Crites has had degenerative knee arthritis, with symptoms that manifested during work. She noted that Ms. Crites's work activities on the day of the injury might be a trigger for the symptoms, though it is not a cause or etiological factor. She noted that the compensable condition for the claim was bursitis of the knee and that medically it is more likely that Ms. Crites's symptoms of degenerative arthritis manifested at work rather than an injury. She found Ms. Crites to be at maximum medical improvement with no whole person impairment. Based upon this report, the claims administrator denied Ms. Crites's request to add the diagnosis of internal derangement and medial meniscal tear as compensable conditions in the claim.

On August 6, 2014, Ms. Crites returned to see Dr. Pavlovich. She complained of continued pain and difficulty with kneeling, squatting, and climbing. He recommended that Ms. Crites return to work on a trial basis with restrictions of no squatting, kneeling or climbing. Ms. Crites returned again to Dr. Pavlovich on October 16, 2014, with similar complaints. On November 10, 2014, the Office of Judges reversed the claims administrator's January 23, 2014,

decision and approved the diagnostic right knee arthroscopy. On November 13, 2014, the Office of Judges reversed the claims administrator's decision and held the claim compensable for a right medial meniscus tear, which was later affirmed by the Board of Review. The Office of Judges issued a November 26, 2014, Order denying internal derangement of the right knee and approving medical meniscus tear.

Ms. Crites sought treatment from Dr. Pavlovich throughout December of 2014 and January of 2015. Dr. Pavlovich noted that Ms. Crites had pain with weight bearing and recurrent effusion. She continued to work but has had pain, catching, and swelling in the knee. On January 29, 2015, the Office of Judges reversed the claims administrator's July 30, 2014, decision denying the addition of the diagnosis of internal derangement and medial meniscus tear to the claim and added a medial meniscus tear in accord with the previous November 26, 2014, Order. The Board of Review affirmed the Office of Judges' Order on April 27, 2015.

On May 21, 2015, Dr. Pavlovich examined Ms. Crites. Dr. Pavlovich noted that a brace had been provided to her. He noted that there was no evidence of instability. Ms. Crites followed up with Dr. Pavlovich on July 16, 2015, and she reported that the cortisone injection provided her complete pain relief for one week. Her pain has since returned. Ms. Crites continued to wear a brace, which did not seem to help her symptoms. Ms. Crites denied any significant anterior or lateral knee pain. It was stated that Ms. Crites had exhausted therapy with cortisone injections. Ms. Crites also had an injection of Synvisc, which aggravated her symptoms. She was advised to return to discuss surgical options. Upon her return, Dr. Pavlovich discussed surgical options including the option of repeating an arthroscopy. He recommended a unicompartmental knee replacement and Ms. Crites agreed with his request. Dr. Pavlovich requested the surgery, as well as Percocet, Vicodin, and Ultram as postsurgical treatment. Dr. Pavlovich filled out an authorization for the same on August 27, 2015.

On September 1, 2015, Dr. Jin evaluated Ms. Crites and determined that she did not have any permanent impairment attributable to the injury in the claim. Dr. Jin reviewed Dr. Pavlovich's initial operative report, which noted that Ms. Crites's meniscus tear was degenerative in nature and not traumatic. After another follow-up with Dr. Pavlovich on October 29, 2015, he suggested a total knee replacement of her right knee. On November 4, 2015, the claims administrator withheld authorization for the knee arthroscopy and the requested medication pending an addendum report from Dr. Jin.

On November 6, 2015, Dr. Jin issued a report that detailed her examination of Ms. Crites. Dr. Jin noted that the medical evidence in the record clearly shows pre-existing advanced right knee arthrosis, which is the true indication for the requested surgery. She found that Ms. Crites will eventually need a total knee replacement but that such a request for treatment is not related to trauma or an injury. She opined that squatting or kneeling is not a trauma or injury to the knee. She believed that the request for the surgery is not for the compensable diagnoses of bursitis and medial meniscal tear. Dr. Jin noted that the compensable condition of meniscal tear which was treated with the partial meniscectomy, will not progress, and opined that Ms. Crites does not need to have another surgery. She also noted that the first surgery did not provide relief which suggests that the meniscal tear was probably not responsible for Ms. Crites's current symptoms.

In addition, there is no medical rationale to have another surgery for a meniscal tear that was surgically treated before. From a medical perspective, Dr. Jin noted that the most likely etiology for Ms. Crites's symptoms is degenerative arthrosis in the knee. It is a chronic, progressive illness, and the requested unicompartment knee surgery is not aimed at treating compensable conditions in the claim. Based upon this report, the claims administrator denied the request from Dr. Pavlovich for right knee scope and the prescription medications, Percocet 5/500, Vicodin 5/500, and Ultram 50 mg for post-operative pain, as well as unicompartment knee replacement surgery on November 12, 2015.

On February 12, 2016, Dr. Pavlovich was deposed. Dr. Pavlovich testified that he was requesting a unicompartmental knee surgery and follow-up postoperative medication for Ms. Crites, although there was some confusion regarding his request. Dr. Pavlovich testified that he performed Ms. Crites's first surgery on May 9, 2014. He repaired Ms. Crites's torn meniscus and also smoothed down her full-thickness articular cartilage injury at the femoral condyle. Dr. Pavlovich testified that he did see some degenerative changes in Ms. Crites's meniscus in the form of horizontal tears. He also testified that these are usually caused by wear and tear. He noted that Ms. Crites also had a radial tear in her meniscus, which he repaired and opined that it was likely related to the alleged mechanism of injury. He testified that he believed that Ms. Crites's compensable injury is causing her current symptoms. On cross examination, Dr. Pavlovich testified that it is possible that Ms. Crites's femoral condyle injury was possibly caused by degeneration. Dr. Pavlovich was asked to describe Ms. Crites's injury as he understood it and he described a twisting injury. When asked further questions regarding Ms. Crites's alleged twisting injury, he admitted that she did not tell him that she twisted her knee, but he feels that she must have to cause this injury. Dr. Pavlovich was unable to confirm whether or not Ms. Crites had physical therapy as a form of treatment. Dr. Pavlovich also confirmed that physical therapy would have helped strengthen Ms. Crites's knee after her initial surgery and would have been an appropriate treatment before undergoing the second surgery. Dr. Pavlovich testified that the two things that were present on Ms. Crites's arthroscopic exam that could have been related to her injury a radial tear of her medial meniscus and a shearing off of some of her medial femoral condyle. He testified that Ms. Crites had a full thickness condyle injury to her articular cartilage that could be related to the injury as well. When asked his opinion as to whether the need for the second surgery to a reasonable degree of medical certainty was as a result of the sequelae of her April 5, 2013, work injury, Dr. Pavlovich stated that he believed the surgery was consistent with her claim and course of treatment.

On June 2, 2016, the Office of Judges found that the requested knee surgeries and medications following surgeries are not medically related and reasonably required for the treatment of a compensable condition. The Office of Judges noted that the claim has been held compensable only for the conditions of a medial meniscus tear and bursitis at this time. Because Dr. Pavlovich specifically testified that the requested treatment would be to treat her articular cartilage injury of the femoral condyle, a non-compensable condition, it should not be covered under the claim. Further, this was supported by the report of Dr. Jin. The Office of Judges noted that Dr. Jin stated in her November 6, 2015, report, that the requested surgery of unicompartmental knee replacement was for pre-existing degenerative arthrosis of the right knee. Dr. Jin found that the medial meniscus tear has been repaired surgically and should not progress

in such a way which would necessitate the requested surgery. Additionally, the Office of Judges found that Dr. Pavlovich did not appear to have attempted physical therapy after the first surgery in order to strengthen the knee, even though he admitted that this would have been appropriate treatment before undergoing a second surgery. Finally, Dr. Pavlovich admitted in his deposition that Ms. Crites's injury could be degenerative in nature. The Board of Review adopted the findings of the Office of Judges and affirmed its Order on November 9, 2016.

After review, we agree with the findings of the Office of Judges as affirmed by the Board of Review. The evidence of records supports the conclusion that the requested knee surgery and follow-up medications were not medically related and reasonably required to treat her compensable knee injury. The claim has been held compensable for a medial meniscus tear and bursitis of the right knee. A previous surgery addressed the meniscus tear and several treatments were aimed at treating the bursitis. Dr. Pavlovich testified that the second surgery was requested to assist Ms. Crites with her articular cartilage injury of the femoral condyle. This condition has not been added as a compensable condition.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  September 22, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker